UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :

TODD LENART,
                                 :     ECF CASE
                     Plaintiff,     :
                                 :     15 Civ. 1922 (JMF)
        - against -           :
                                 :

COACH, INC.,
                                 :
                    Defendant.    :
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

Of Counsel:

    David W. Garland

On the Brief:

    David W. Garland
    Nathaniel M. Glasser

FIRM:29914216

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

THE COMPLAINT'S ALLEGATIONS ................................................................... 2

ARGUMENT ............................................................................................................ 4

POINT I      LEGAL STANDARD.................................................................. 4

POINT II     LENART HAS NOT MET THE HIGH THRESHOLD TO STATE
A HOSTILE WORK ENVIRONMENT CLAIM.................................. 6

           A.    Lenart Has Not Alleged Severe or Pervasive Conduct Required
to State a Claim Under Federal or State Law ............................. 6

           B.    Even Under the More Lenient Standard of the NYCHRL,
Lenart's Hostile Work Environment Claim Should Be Dismissed .......... 11

POINT III    LENART HAS NOT STATED A CLAIM FOR SEX
DISCRIMINATION ........................................................................ 13

           A.    Lenart's Termination Cannot Form the Basis of a
Sex Discrimination Claim Under Title VII or the NYSHRL .................. 13

           B.    Lenart Has Not Alleged Differential Treatment
Based on His Gender .......................................................... 16

POINT IV    LENART'S REMAINING CLAIMS FAIL ....................................... 17

CONCLUSION...................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002)................................................................................10, 11

*Anderson v. Davis Polk & Wardwell LLP*,
    850 F. Supp. 2d 392 (S.D.N.Y. 2012)........................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007)............................................................................................4

*Ben-Levy v. Bloomberg, L.P.*,
    518 F. App'x 17 (2d Cir. 2013) ................................................................................17

*Bernstein v. St. Paul Cos.*,
    134 F. Supp. 2d 730 (D. Md. 2001) ..........................................................................14

*Brown v. Coach Stores, Inc.*,
    163 F.3d 706 (2d Cir. 1998)......................................................................................10

*Carter v. Verizon*,
    No. 13 Civ. 7579, 2015 U.S. Dist. LEXIS 6370 (S.D.N.Y. Jan. 20, 2015)............5, 8

*Cristofaro v. Lake Shore Cent. Sch. Dist.*,
    473 F. App'x 28 (2d Cir. 2012) ................................................................................10

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014)........................................................................................9

*Deras v. Metro. Transp. Auth.*,
    No. 11-CV-5912, 2013 U.S. Dist. LEXIS 40456 (E.D.N.Y. Mar. 22, 2013)............8

*Desardouin v. City of Rochester*,
    708 F.3d 102 (2d Cir. 2013)........................................................................................6

*EEOC v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014)..................................................................................5, 15

*Gorokhovsky v. N.Y. City Hous. Auth.*,
    552 F. App'x 100 (2d Cir. 2014) ..............................................................................12

*Harbas v. Gilmore*,
    193 A.D.2d 553, 597 N.Y.S.2d 704 (1st Dep't 1996) ..............................................14

*Henry v. N.Y. City Health & Hosp. Corp.*,
    18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) ................................................5, 13, 15

*Hernandez v. Kaisman*,
    103 A.D.3d 106 (1st Dep't 2012) ........................................................................11

*Johnson v. Morrison & Foerster LLP*,
    No. 14-CV-428, 2015 U.S. Dist. LEXIS 24008 (S.D.N.Y. Feb. 26, 2015)........5, 12, 14

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
    496 F.3d 229, 237 (2d Cir. 2007).........................................................................4

*Kaur v. N.Y. City Health & Hosp. Corp.*,
    688 F. Supp. 2d 317 ..........................................................................................10

*Kaye v. Storm King Sch.*,
    No. 11 CV 3369, 2011 U.S. Dist. LEXIS 152758 (S.D.N.Y. Nov. 18, 2011)..........8

*Lutes v. Goldin*,
    62 F. Supp. 2d 118(D. C. Cir. 1999)...................................................................14

*Maldonado v. George Western Bakeries*,
    441 F. App'x 808, 809 (2d Cir. 2011) ..................................................................5

*Mihalik v. Credit Agricole Cheuveux N. Am., Inc.*,
    715 F.3d 102, 114 (2d Cir. 2013).......................................................................12

*Murray v. Visiting Nurse Servs. of N.Y.*,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007)..............................................................7, 10

*Olle v. Columbia Univ.*,
    332 F. Supp. 2d 599 (S.D.N.Y. 2014)...............................................................6, 9

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75, 80-81 (1998) ..................................................................................6

*Opsatnik v. Norfolk S. Corp.*,
    No. Civ. 06-81, 2008 U.S. Dist. LEXIS 26727 (W.D. Pa. Mar. 20, 2008) *aff'd*,
    335 Fed. App'x 220 (3d Cir. Pa. 2009)................................................................14

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998)..............................................................................10

*Simmons v. Akin Gump Strauss Haver & Feld, LLP*,
    508 F. App. x 10, 13 (2d Cir. 2013)...................................................................13

*Sletten v. LiquidHub, Inc.*,
    No. 13 Civ. 1146, 2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. July 11, 2014) ...........4, 5, 7, 12

ii

*Socci v. China Grill, Inc.*,
    2001 N.Y. Misc. LEXIS 770 (N.Y. Sup. Ct. Kings Cty. Oct. 5, 2001) ...................................11

*Woodard v. TWC Media Solutions, Inc.*,
    No. 09-cv-3000, 2011 U.S. Dist. LEXIS 1536, at *26 (S.D.N.Y. Jan. 4, 2011),
    *aff'd* 487 F. App'x 613 (2d Cir. 2012) ...............................................................................12

**Statutes**

42 U.S.C. § 2000 *et seq.* ...................................................................................................1, 2, 10, 13

N.Y. Exec. Law § 296 *et seq.* ................................................................................................. *passim*

Administrative Code of the City of New York § 8-101 *et seq.* ............................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................................4

FIRM:29914216

## PRELIMINARY STATEMENT

Nearly two years ago, plaintiff Todd Lenart filed a Charge of Discrimination against defendant Coach, Inc. ("Coach"), his former employer, in the Equal Employment Opportunity Commission ("EEOC").   Following an extensive investigation, the EEOC issued a Notice of Right to Sue without finding that Coach ever discriminated against Lenart.  Now, Lenart has filed a Complaint in this Court that attempts to cobble together claims of discrimination where none exists.  Indeed, in a case where Lenart alleges that Coach discriminated against men by hiring less-qualified females in its Tax Department, he pleads just the opposite, namely that Coach not only hired him but also offered his supervisor's position to a highly qualified male candidate.

An examination of the Complaint shows that Lenart has failed to state a claim under any of the theories he has attempted to plead, namely that he suffered from a hostile work environment or that his discharge was the product of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-101 *et seq.* ("NYCHRL").

As for his claims of hostile work environment, Lenart alleges nothing more than a handful of positive comments about women made outside of his presence by his second-line supervisor, Nancy Walsh.  The Complaint does *not* allege that any gender-biased remarks were directed to or about Lenart individually.  Nor does the Complaint allege that these remarks interfered with or inhibited his performance, or altered any conditions of his employment – which is essential to establishing a hostile environment.  Thus, the stray remarks about which

Lenart complains, even if true, are insufficient as a matter of law to establish a claim of hostile

work environment under Title VII, the NYSHRL, or the NYCHRL.

With regard to Lenart's disparate treatment claims, the only adverse employment action

alleged is the termination of his employment claim. But the Complaint fails to plead any

allegations in support of the notion that Coach terminated Lenart because of his gender. On the

contrary, the Complaint pleads that Coach sought to fill the position of Lenart's supervisor with a

highly qualified male candidate – and only offered the position to a female when the male

candidate rejected Coach's offer. Lenart does not plead any allegations that the hiring and

promotional decisions about *other* individuals had any impact on Coach's decision to terminate

*his* employment. Thus, the Complaint fails to plead a plausible claim that his discharge occurred

under circumstances giving rise to an inference of sex discrimination, and therefore the disparate

treatment claims fail as well.

## THE COMPLAINT'S ALLEGATIONS

Coach is an American leather-goods brand, headquartered in New York. (Compl. ¶ 3).

Todd Lenart, a tax attorney, was employed by Coach as Divisional Vice President of

International Tax within the Tax Department from March 2012 through April 5, 2013, when

Coach terminated his emloyment. (*Id.* at ¶¶ 9-10). While employed by Coach, Lenart reported

directly to the Vice President of the Tax Department, a position occupied initially by Thomas

Shortway, a male, from March 2012 to October 2012, and then Elizabeth Leete, a female,

beginning in October 2012. (*Id.* at ¶¶ 11 and 13). Before Leete was hired, however, Coach

offered her position to a male candidate who rejected it. (*Id.* at ¶ 24). Throughout the entirety of

Lenart's employment (including when Lenart was hired and when his supervisor's position was

offered to a male), the Tax Department, a sub-group of the Treasury Department, was headed by

Nancy A. Walsh, Senior Vice President, Treasury, and Head of the Treasury and Tax Departments. (*Id.* at ¶¶ 9 and 11).

Lenart alleges that Walsh and Leete subjected him to a hostile work environment based on his gender (male), and discriminated against him, including by terminating his employment, on the basis of his gender. (Compl. ¶ 12).

Among the many peculiar allegations of the Complaint, Lenart alleges that the Treasury Department engaged in discriminatory hiring and promotion practices against males – despite the fact that Coach hired him. (Compl. ¶¶ 9 and 18). Lenart alleges that he interviewed with fourteen individuals and underwent psychological testing before being offered his position. (*Id.* at ¶¶ 13 and 22). By contrast, Lenart alleges that female candidates "were fast-tracked with substantially fewer interviews and without psychological testing." (*Id.* at ¶¶ 9 and 11). Lenart also alleges that Coach hired lesser qualified females over more qualified male applicants. (*Id.* at ¶ 23.) As an example, Lenart points to Leete, who applied for and received the position of Vice President, Tax – a position that Lenart does *not* allege he sought. (*Id.* at ¶ 23). Lenart alleges that "two other final candidates for the position for Vice President Tax were male and were more qualified than Leete for this position." (*Id.* at ¶ 28). Lenart, however, acknowledges that "Coach initially offered Leete's position to a male candidate who ultimately turned it down." (*Id.* at ¶ 24).

Lenart also alleges that *other* males were treated less favorably than their female peers. For example, Lenart alleges that Regina Paloise, a female manager in Coach's Treasury Department, was given an office before "more senior male members such as [Matthew] Morford" and was promoted before her male peers, such as Patrick Rodriquez. (Compl. ¶ 29). Lenart claims that his male colleagues Morford and William Trottman "often complained to him

3

and others that they were treated in a discriminatory manner . . . and felt that the female gender

bias at Coach would prevent them from receiving promotions." (*Id.* at ¶ 30).  Lenart, however,

does *not* allege that *he* was treated less favorably than similarly situated female employees, nor

does he allege that Morford or Trottman were denied a promotion for which they applied.

     Lenart alleges that he heard various comments relating to the promotion of women at the

workplace:

- Walsh allegedly told Morford, "I would like to have a staff of all women." (Compl. ¶ 19).

- Shortway allegedly "regularly commented about Walsh's desire to create a 'team of Amazon women' to work in the Tax Department." (Compl. ¶ 30).

- Morford and Trottman allegedly "regularly commented on how Walsh supported 'girl power.'" (Compl. ¶ 30).

- After Lenart's termination, Walsh allegedly "stated that she had created 'a girl power team based in New York.'" (Compl. ¶ 31).

Lenart does *not* allege that Walsh made any such comments in his presence.  Nor does Lenart

allege that any such comments were about *him*.

## ARGUMENT

### POINT I

### LEGAL STANDARD

     On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6), the Court must accept all factual allegations in the Complaint as true and draw all

reasonable inferences in favor of the plaintiff. *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146, 2014

U.S. Dist. LEXIS 94697, at *8 (S.D.N.Y. July 11, 2014), *citing Kassner v. 2nd Ave.*

*Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  Nonetheless, a plaintiff must allege facts

sufficient "to raise a right of relief above the speculative level." *Id.*, *citing Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A complaint should be dismissed where it fails to "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks omitted), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), ; *see also Sletten*, 2014 U.S. Dist. LEXIS 94697, at *8.

Although a plaintiff need not plead specific facts establishing a *prima facie* case of discrimination in order to survive a motion to dismiss, "the claim asserted must still be facially plausible and give fair notice to the defendants of [its] basis." *Sletten*, 2014 U.S. Dist. LEXIS 94697, at *9 (internal citations and quotation marks omitted).  Indeed, "the elements of a *prima facie* case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible." *Carter v. Verizon*, No. 13 Civ. 7579, 2015 U.S. Dist. LEXIS 6370, at *15 (S.D.N.Y. Jan. 20, 2015); *see also Henry v. N.Y. City Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014).  Dismissal is appropriate where the plaintiff fails to allege even the basic elements of a discrimination claim.  *Sletten*, 2014 U.S. Dist. LEXIS 94697, at *9, *citing Maldonado v. George Western Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011).  "Naked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428, 2015 U.S. Dist. LEXIS 24008, at *7 (S.D.N.Y. Feb. 26, 2015) (internal citations and quotation marks omitted).

FIRM:29914216

## POINT II

## LENART HAS NOT MET THE HIGH THRESHOLD TO STATE A HOSTILE WORK ENVIRONMENT CLAIM

**A.   Lenart Has Not Alleged Severe or Pervasive Conduct Required to State a Claim Under Federal or State Law**

Lenart has not stated a claim under federal or state law because the allegations do not

show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult .

. . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment." *Olle v.*

*Columbia Univ.*, 332 F. Supp. 2d 599, 611 (S.D.N.Y. 2014) (internal citations and quotation

marks omitted); *see also Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013).  A

plaintiff may establish a hostile work environment claim by demonstrating either that a single

incident was extraordinarily severe or that a series of incidents were sufficiently continuous and

concerted so as to have altered the terms and conditions of employment. *Olle*, 332 F. Supp. 2d at

611 (citing cases that hold that episodic incidents, incidents that are relatively minor and

infrequent, and offhand comments, are insufficient).  In analyzing a hostile work environment

claim, courts consider factors such as the frequency of the alleged discriminatory conduct, its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance. *Id.* at 611-12.  A

plaintiff must prove "that the conduct at issue was not merely tinged with offensive connotations,

but actually constituted *discrimina[tion]* . . . because of . . . sex." *Id.* at 611, *quoting Oncale v.*

*Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (emphasis in original; internal

quotation marks omitted).

Lenart's entire hostile work environment claim is premised on a handful of comments of

female empowerment – all of which were heard second- or third-hand from his male colleagues,

and one of which allegedly was made *after* his employment ended.  Lenart alleges that Walsh

6

made only a single comment related to gender over the course of his one year of employment with Coach: he heard – secondhand at best (as he makes the allegation "upon information and belief") – that Walsh stated to another male colleague, "I would like to have a staff of all women." (Compl. ¶ 19). The only other comment allegedly made by Walsh that related to gender was made in a meeting that occurred *after Lenart's termination*, when Walsh stated that she had created "a girl power team based in New York." (Compl. ¶ 31).[1] This is yet another hearsay statement that Walsh heard secondhand. Finally, Lenart's male colleagues, who allegedly believed Walsh favored women over men, claimed that Walsh desired to create a "team of Amazon women" to work in the Tax Department and that Walsh supported "girl power." (*Id.* at ¶ 30). Even accepting Lenart's allegations as true, none of the alleged remarks, taken individually or in concert, rises to the level of severe or pervasive conduct required to state a claim for hostile work environment.

Additionally, none of the statements is alleged to have been made directly to Lenart. Any expressions allegedly made by Walsh were relayed to Lenart by male colleagues. (Compl. ¶¶ 19, 30, 31). Although secondhand comments cannot be ignored on a motion to dismiss, "secondhand comments are not as impactful on one's environment as are direct statements; consequently, they are less persuasive in stating a hostile work environment claim." *Sletten*, 2014 U.S. Dist. LEXIS 94697, at *21-22 (citing cases). Moreover, where, as here, "the *only* offensive statements are learned of secondhand, they are insufficiently 'severe and pervasive,' in and of themselves, to support a claim for a hostile work environment." *Id.* at 22 (emphasis added) (finding that three direct comments and host of secondhand comments were not severe or pervasive); *see also Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 278-79

---

[1] This comment in particular adds little to Lenart's claim, as he did not hear of it until after his discharge. *Murray*, 528 F. Supp. 2d at 280 (comments made outside of the plaintiff's presence that did not implicate the plaintiff and that the plaintiff learned of after his termination were not considered severe or pervasive).

FIRM:29914216

(S.D.N.Y. 2007) (comments overheard by the plaintiff not directed at him constituted stray remarks).

Further, it is not clear that all of the quoted expressions in the Complaint were made by Walsh. It appears that some of the remarks simply reflect the interpretations by a handful of male employees of Walsh's actions. For instance, Lenart's allegations that Shortway "*commented about Walsh's desire* to create a 'team of Amazon women'" and that Morford and Trottman "*commented on how Walsh supported* 'girl power'" suggest that the quoted expressions are other men's interpretations of Walsh's desires, rather than statements made by Walsh herself. (Compl. ¶ 30 (emphasis added)). Lenart's allegations regarding observations made by others, even when combined with the two hearsay statements he allegedly heard secondhand, are neither severe nor pervasive. *See, e.g., Carter*, 2015 U.S. Dist. LEXIS 6370, at *30-31 (S.D.N.Y. Jan. 20, 2015) (finding the plaintiff's allegations of "observations" and physical touchings – including allegations that the plaintiff's supervisor would place her hands on his shoulders, press her breasts against plaintiff, and ask "Do you have some money for me?" – did not amount to plausible claim of hostile work environment); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (dismissing hostile work environment claims where the plaintiff alleged, without specifying a time period, that his supervisor stood too close to the plaintiff on occasions and "'place[d] her vagina literally on my left shoulder or inches from my face'").

In any event, none of the expressions was made about Lenart specifically, nor was any made to him directly or even in his presence. Without any such comments made to or about him, Lenart cannot claim that the conduct was severe or pervasive. *Kaye v. Storm King Sch.*, No. 11 CV 3369, 2011 U.S. Dist. LEXIS 152758, at *12 (S.D.N.Y. Nov. 18, 2011) ; *see also Deras v.*

8

*Metro. Transp. Auth.*, No. 11-CV-5912, 2013 U.S. Dist. LEXIS 40456, at *24 (E.D.N.Y. Mar. 22, 2013) ("A plaintiff who relies upon harassment that did not occur in plaintiff's immediate vicinity must establish that he shared the same environment – broadly conceived – as the person allegedly harassed and that his own employment was adversely affected by the harassment." (internal citations and quotation marks omitted)); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [the plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [the plaintiff's] termination."). While Lenart worked in Walsh's department, all of the alleged comments attributed to Walsh relate to hiring and promotional practices and, as detailed further below, Lenart does *not* allege that he was adversely impacted by hiring or promotional practices at Coach. Thus, Lenart cannot show that he was adversely affected by the alleged comments.

Even if these comments can be attributed to Walsh, however, they are nothing more than generalized statements of female empowerment in the corporate context. They are *not* personal attacks or derogatory statements regarding men. The alleged expressions by Walsh can hardly be characterized as "discriminatory intimidation, ridicule or insult." At most, they are "mere offensive utterances" made *outside* of Lenart's presence. These minor and isolated comments do not establish a claim of hostile work environment. *See, e.g., Olle*, 332 F. Supp. 2d at 612-15 (finding the following alleged sexist remarks to be minor and isolated: supervisor's email request to the plaintiff to use her "charm and connections" to assist in attracting luncheon speakers; supervisor's suggestion that the plaintiff to use her "feminine wiles" in speaking with male superior; supervisor's reference to another applicant as *Megsazanyodott orgelany*, which the plaintiff translates as "old girl turns sour"; male superior's comments about a sexual fantasy at a

9

luncheon with author of *Vagina Monologues*); *Murray*, 528 F. Supp. 2d at 279 (allegedly

offensive greetings were not hostile and more accurately classified as friendly and thus did not

affect conditions of employment).

Courts have determined that far more egregious conduct does *not* rise to the level of

severe or pervasive conduct as a matter of law.  *See, e.g., Cristofaro v. Lake Shore Cent. Sch.*

*Dist.*, 473 F. App'x 28, 30 (2d Cir. 2012) (where, over seven-year period, the plaintiff's

supervisor "occasionally commented on [plaintiff's] physical appearance," "participated in a bet

with three other male employees as to when [the supervisor] would be able to engage [plaintiff]

in sexually explicit conversation," engaged "in conversation unrelated to work once a month for

three-and-a-half years," and "briefly made contact with the side of [plaintiff's] body," among

other actions, hostile work environment could not be established as matter of law under Title VII

or NYSHRL); *Alfano v. Costello*, 294 F.3d 365, 379-80 (2d Cir. 2002) (collecting cases in which

courts have not found sufficient evidence of hostile work environment); *Brown v. Coach Stores,*

*Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (supervisor's occasional racist remarks "fail[ed] to

constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile

environment"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 763-64 (2d Cir. 1998) (no

hostile work environment under federal or state law where colleague "told [the plaintiff] she had

been voted the 'sleekest ass' in the office" and "deliberately touched [the plaintiff's] breasts with

some papers that he was holding his hand"); *Kaur v. N.Y. City Health & Hosp. Corp.*, 688 F.

Supp. 2d 317, 337-38 (two "obviously racist comments" by supervisors about Indian plaintiff –

"we don't want foreigners here.  This is Harlem, a black community.  We don't like foreigners,"

and "I know where you are from … You eat shit and holy cow" – plus two other ambiguous

comments from supervisors and numerous derogatory comments from co-workers did not

10

establish hostile work environment); *Hernandez v. Kaisman*, 103 A.D.3d 106 (1st Dep't 2012) (no hostile work environment under NYSHRL where employer sent five emails containing offensive sexual media content to his employees, touched a female employee's buttocks and suggested that she "tighten" it up, suggested to the plaintiff that she get breast enlargement, frequently stated that he liked large-breasted women, put whipped cream in his mouth and asked plaintiff if it "looked familiar," referred to himself as a "pimp," and placed condoms in drawer accessible to all employees); *Socci v. China Grill, Inc.*, 2001 N.Y. Misc. LEXIS 770, at *10-11 (N.Y. Sup. Ct. Kings Cty. Oct. 5, 2001) (no hostile work environment where plaintiff alleged her supervisor asked to touch her chest, did so without her permission, and bit another female co-worker's buttocks in her presence).

Finally, Lenart has *not* alleged how frequently such incidents occurred. Yet nothing in the Complaints indicates that they were anything more than episodic comments that occurred over the course of a year. Such allegations do *not* demonstrate pervasive conduct by Walsh or Coach. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (internal citation and quotation marks omitted).

For each of these reasons, the Court should dismiss Plaintiff's claims of hostile work environment under the federal and state law (Fourth and Fifth Claims).

**B.    Even Under the More Lenient Standard of the NYCHRL, Lenart's Hostile Work Environment Claim Should Be Dismissed**

Lenart's claim for hostile work environment under the NYCHRL should also be dismissed. Lenart fails to state that he was treated differently than any similarly situated female colleagues, which is a requirement of establishing a claim of hostile work environment of the City Law.

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Gorokhovsky v. N.Y. City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014), *quoting Mihalik v. Credit Agricole Cheuveux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013). Even though the standard under the NYCHRL is more lenient than under federal or state law, "[t]his is not to suggest that plaintiff's burden in pleading a hostile work environment claim under the NYCHRL is trivial." *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146, 2014 U.S. Dist. LEXIS 94697, at *24 (S.D.N.Y. July 11, 2014. When "the conduct alleged is far from a 'borderline violation' of state law, then the plaintiff has failed to state a claim under the NYCHRL as well." *Id.*, *quoting Woodard v. TWC Media Solutions, Inc.*, No. 09-cv-3000, 2011 U.S. Dist. LEXIS 1536, at *26 (S.D.N.Y. Jan. 4, 2011) (internal quotation marks omitted), *aff'd* 487 F. App'x 613 (2d Cir. 2012).

The vast majority of the Complaint focuses on the perceived unfairness in the hiring and promotion processes at Coach. Yet Lenart does not allege that *he* was treated unfairly in either of these processes – precisely because he cannot do so. Indeed, Coach hired Lenart and offered his supervisor's position to a male candidate. Further, he does not allege that he applied for or was denied a promotion. *Cf. Johnson v. Morrison & Foerster LLP*, No. 14-CV-428, 2015 U.S. Dist. LEXIS 24008, at *8-9 (S.D.N.Y. Feb. 26, 2015) (dismissing failure to promote claim where the plaintiff made no allegation that he applied, formally or informally, for promotion). His allegations that his female colleagues were the beneficiaries of discriminatory hiring practices to the detriment of *other* men and that his male colleagues *perceived* that women were

favored over men do *not* establish that Lenart himself was treated unfairly.  Thus, the Court should dismiss Lenart's claim of hostile work environment under the NYCHRL (Sixth Claim).

## POINT III

### LENART HAS NOT STATED A CLAIM FOR SEX DISCRIMINATION

**A.      Lenart's Termination Cannot Form the Basis of a Sex Discrimination Claim Under Title VII or the NYSHRL**

The Complaint specifies only a single adverse action suffered by Lenart – the termination of his employment.  To be actionable, Lenart's Title VII and NYSHRL discrimination claims must be premised on conduct taken *because of* his sex.  *Henry v. N.Y. City Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) (citing cases).  Yet by Lenart's own allegations, there is absolutely no connection between his discharge and his sex.  Therefore, the Court should dismiss his sex discrimination claims under Title VII and the NYSHRL.

To establish a *prima facie* case of employment discrimination based on sex, a plaintiff must prove:  (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on his sex.  *Henry*, 18 F. Supp. 3d at 403-04; *see also Simmons v. Akin Gump Strauss Haver & Feld, LLP*, 508 F. App. x 10, 13 (2d Cir. 2013).  Lenart cannot show that his discharge occurred under circumstances giving rise to an inference of sex discrimination.

On the contrary, Lenart alleges that his position was eliminated as part of a reorganization of the Tax Department to better support Coach's needs.  (Compl. ¶¶ 32-33.)  Consistent with that allegation Lenart pleads that he was not told that his discharge was related to his performance. (*Id.* at ¶ 34).  And he does *not* plead *any* allegation suggesting that Coach discharged him because of his gender.

13

Moreover, Lenart does not allege who made the decision to terminate his employment. While Lenart pleads that Leete delivered the discharge decision to him (Compl. ¶ 33), there are no allegations in the Complaint that remotely suggest that Leete harbored any discriminatory animus toward men generally or Lenart specifically.  Lenart makes no allegations that Leete made any sexist or otherwise disparaging remarks, favored his female colleagues over him, or otherwise harbored any gender-based discriminatory animus.  The conclusory statement that Leete "discriminated against Lenart" (*id.* at ¶ 11) is insufficient to save Lenart's discrimination claims on a motion to dismiss. *See, e.g., Johnson*, 2015 U.S. Dist. LEXIS 24008, at *14-16 (dismissing federal claims based on termination where the plaintiff did not allege any facts to indicate that true reason for discharge was his age, race, or sex, instead relying on conclusory assertions); *Harbas v. Gilmore*, 193 A.D.2d 553, 553, 597 N.Y.S.2d 704, 704 (1st Dep't 1996) (affirming dismissal of complaint where the plaintiff offered "[o]nly speculation and supported conclusions" in alleging disability discrimination).

Walsh is the only individual alleged to have made any gender-based comments.  As stated above, these comments do not evidence discriminatory bias. *See also Opsatnik v. Norfolk S. Corp.*, No. Civ. 06-81, 2008 U.S. Dist. LEXIS 26727, at *34-35 (W.D. Pa. Mar. 20, 2008) *aff'd*, 335 Fed. App'x 220 (3d Cir. Pa. 2009) (rejecting the plaintiff's argument that diversity initiatives were evidence of a corporate "culture of affirmative action" encouraging reverse discrimination and noting that "to use diversity concerns, without more, as evidence of discrimination would be irresponsible); *Bernstein v. St. Paul Cos.*, 134 F. Supp. 2d 730, 732-33 (D. Md. 2001) (comment by CEO that he did not want company to consist exclusively of white men and company's commitment to diversity did not raise inference that company had policy of illegal discrimination); *Lutes v. Goldin*, 62 F. Supp. 2d 118, 130-32(D. C. Cir. 1999) (statements

14

by head of NASA advocating for diversity in the workforce did not evidence discrimination against the majority or against the plaintiff).

The remainder of Lenart's allegations concerns the hiring and promotional process at Coach, but these general allegations about conduct affecting other employees – who Lenart has *not* alleged are similarly situated to him – cannot form the basis of a discriminatory discharge claim. As an initial matter, the Complaint fails to identify and describe similarly situated female comparators who were treated more favorably than he was, and as such, he has not demonstrated an inference of sex discrimination. *See Henry*, 18 F. Supp. 3d at 408-09 (the plaintiff's race and gender discrimination claims dismissed, in part, due to failure to allege identify and/or describe purported comparators who were similarly situated in all relevant respects); *see also EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (affirming dismissal of equal pay suit where EEOC failed to compare female attorneys-plaintiffs' actual job duties with those of male attorneys to support its claim that male and female attorneys were performing equal work; EEOC's "bald recitation of the elements of an EPA claim and its assertion that the attorneys at issue held 'the same job code' are plainly insufficient to support a claim under the EPA"). In fact, the comparisons drawn in the Complaint are exclusively between candidates seeking *other* positions. (*See, e.g.*, Compl. ¶¶ 23-28 (comparing candidates for the Vice President, Tax, position to which Lenart reported)).

Lenart's own factual allegations demonstrate that Coach's hiring practices did not favor women over men. Although Lenart alleges that "[t]he environment at Coach was permeated by gender/sex bias against men, which was reflected in the company's (specifically the Treasury Department's) hiring and promotion practices" (Compl. ¶ 18), certainly Lenart was not harmed by alleged discriminatory hiring practices because he was hired by Coach. Further, Lenart's

15

allegation that his direct supervisor, Leete, benefited from a discriminatory hiring process is undermined by his admission that "Coach initially offered Leete's position to a male candidate who ultimately turned it down." (*Id.* at ¶ 24.)

With respect to the promotional process at Coach, Lenart does not allege that he was denied a promotion or even that he ever applied for a promotion. Lenart's allegation that certain of his male colleagues "felt that the female gender bias at Coach would prevent them from receiving promotions" is a red-herring (Compl. ¶ 30). Lenart does not allege that these individuals actually ever applied for a promotion. Moreover, Lenart's allegation that *other* men were treated unfairly in the promotion process does not support an inference that Coach discharged him for discriminatory reasons. As a result, any allegations regarding the promotional process are irrelevant to his claims.

Without any connection between the discharge decision and discriminatory intent, Lenart cannot prove his employment was terminated because of his sex. Thus, the Court should dismiss the First and Second Claims.

**B.  Lenart Has Not Alleged Differential Treatment Based on His Gender**

Again, under the NYCHRL, Lenart has not alleged that he was treated less favorably than similarly situated female employees. Thus, he has failed to state a claim for gender discrimination under the NYCHRL.

As stated above, Lenart has not even identified similarly situated employees to which he should be compared. In any event, he cannot claim to have been treated less favorably in hiring or promotion, as he was hired by Coach and does not allege he applied for a promotion. As to his termination, there are no allegations in the Complaint connecting the discharge decision – or even the alleged decision-maker – to a discriminatory motive. Stating a claim under the NYCHRL still requires a showing of "some evidence from which discrimination can be

16

inferred." *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 20 (2d Cir. 2013).  No inference of discrimination can be drawn from the Complaint, as there is no connection between the discharge and any alleged discriminatory conduct or remark.  As a result, the Court should dismiss Lenart's claim of discriminatory discharge under the NYCHRL (Third Claim).

## POINT IV

### LENART'S REMAINING CLAIMS FAIL

Lenart's remaining claims for vicarious liability under NYCHRL, § 8-107(13)(b) – which appear to be two identical and therefore duplicative claims – should be dismissed because his underlying claims for sex discrimination and hostile work environment fail as a matter of law. Without an underlying showing of discrimination, Lenart cannot sustain his claims for vicarious liability, and the Seventh and Eighth Claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice.

EPSTEIN BECKER & GREEN, P.C.

By:   /s/ David W. Garland
      David W. Garland
      Nathaniel M. Glasser
      250 Park Avenue
      New York, New York 10177
      (212) 351-4500
      *Attorneys for Defendant Coach, Inc.*

Dated:  May 11, 2015

17