```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
TODD LENART,                                            :
                                                        :
                              Plaintiff,                :     15-CV-1922 (JMF)
                                                        :
              -v-                                       :     OPINION AND ORDER
                                                        :
COACH, INC.,                                            :
                                                        :
                              Defendant.                :
                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Todd Lenart brings this action against Coach Inc. ("Coach"), his former employer, alleging sex discrimination and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code 8-101 *et seq.*  Lenart now moves to stay all proceedings and to place the docket under seal; Coach cross-moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint in its entirety.  For the reasons stated below, Coach's motion is granted in part and denied in part, and Lenart's motion is denied.

## BACKGROUND

The following facts, taken from the Complaint, are presumed to be true for the purposes of this motion.  *See Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013).  Coach is a well-known manufacturer and distributer of high-end leather goods.  (Compl. (Docket No. 1) ¶ 3). Lenart, a male tax lawyer, was hired by Coach in February 2012 after being recruited by the Tax Department's Vice President, Thomas Shortway.  (*Id.* ¶ 13).  Lenart served as Divisional Vice

President of International Tax.  (*Id.* ¶¶ 9, 14).  Lenart alleges that, while at Coach, he experienced a hostile work environment and was discriminated against "on the basis of his sex and gender" by the company and two female supervisors: Nancy A. Walsh, the Senior Vice President of Coach's Treasury Department (of which the Tax Department was a sub-group), and Elizabeth Leete, who replaced Shortway as Vice President of the Tax Department in October 2012.  (*Id.* ¶¶ 11-13).  He claims that "Coach was permeated by gender/sex bias against men, which was reflected in the company's (specifically the Treasury Department's) hiring and promotion practices, discriminatory treatment of its male employees, and discriminatory comments about male employees in the work place."  (*Id.* ¶ 18).

More specifically, Lenart alleges that men were subjected to a more rigorous hiring process than women and that Coach often favored women in its hiring over more qualified men.  For example, although Lenart had to interview with fourteen people and undergo psychological testing before he was hired, two women — Cheryl Norden and Valerie Kilbridge — interviewed with only four people and did not take any psychological tests.  (*Id.* ¶¶ 14-22).  Additionally, after the first person whom Coach approached to replace Shortway — a man — declined the position, Coach chose Leete over two more qualified male candidates.  (*Id.* ¶¶ 23-28).  In addition to preferential hiring, Lenart also claims that women were "given preferential treatment" once employed by Coach.  (*Id.* ¶ 29).  For example, he alleges that a female manager in the Treasury Department was given an office before "more senior male members" and that the female manager was "regularly invited" by Walsh to meetings with senior executives while her male colleagues were not given "similar access."  (*Id.*).  Lenart also claims that his male co-workers complained to him that they were victims of discrimination and that they "felt that the female gender bias at Coach would prevent them from receiving promotions."  (*Id.* ¶ 30).

2

Further, one of Lenart's male colleagues told him that Walsh had said "on numerous occasions" that she would "like to have a staff of all women." (*Id.* ¶ 19).

Lenart was fired on April 5, 2013. (*Id.* ¶ 32). He was told at the time that "a decision had been made to reorganize the tax function . . . which resulted in the elimination of his position." (*Id.* ¶ 33). After Lenart's termination, most of his responsibilities were taken over by a female employee, and Lenart's former co-worker informed him that Walsh had said at a meeting that she had created "a girl power team based in New York." (*Id.* ¶¶ 31, 35). Lenart filed the instant case on March 13, 2015, alleging that his termination was the result of sex discrimination and that he was subjected to a hostile work environment while at Coach. (Docket No. 1). As noted, Lenart now moves to stay the case in light of ongoing proceedings before the Occupational Safety and Health Administration ("OSHA"), which also involve Lenart's termination by Coach, and to seal the docket. (Docket No. 11). Coach opposes the stay, and cross-moves to dismiss the Complaint under Rule 12(b)(6). (Docket No. 12).

## COACH'S MOTION TO DISMISS

The Court begins with Coach's motion to dismiss. In evaluating a motion to dismiss, the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g* .,*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant acted

unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. at 570.

Discrimination claims brought under Title VII and the NYSHRL are evaluated under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Although it is "unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis" applies to NYCHRL claims, *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013), courts in the Second Circuit generally apply the "liberal standards [of the NYCHRL] to the basic *McDonnell Douglas* framework." *Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases). Under that framework, a plaintiff must first make out a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff meets that "*de minimis*" initial burden, *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998), he is entitled to a temporary presumption of discrimination, and the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action, *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, the temporary presumption "drops from the picture," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), and the burden shifts back to the plaintiff to show "pretext." *Id.*

*Twombly* and *Iqbal* notwithstanding, the Supreme Court has held that, to survive a motion to dismiss, "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*." *Twombly,* 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Significantly, the Second Circuit recently clarified the applicability of

*Iqbal*'s plausibility requirement in light of *Swierkiewicz*. *See Littlejohn v. City of N.Y.*, 795 F.3d 297 (2d Cir. 2015). The Court held that "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311. Under that standard, a plaintiff can survive a motion to dismiss if she alleges: "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Id.*

## A. Hostile Work Environment

The Court turns first to Lenart's hostile work environment claims, beginning with the claims under Title VII and NYSHRL, which are governed by the same standards. *See e.g.*, *McGullam v. Cedar Graphics, Inc.*, No. 04-CV-2891 (DRH) (AKT), 2008 WL 3887604, at *5 n.4 (E.D.N.Y. Aug. 20, 2008) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). To prevail on a hostile work environment claim under Title VII or the NYSHRL, a plaintiff must show that his or her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks and alteration omitted). The laws do not reach "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex"; instead, they forbid "only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Thus, "courts must distinguish between merely

offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment," *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (internal quotation marks omitted), based on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Lenart fails to plausibly allege behavior "so extraordinarily severe . . . to have altered the conditions of [his] working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). First, many of Lenart's allegations are undermined, if not directly contradicted, by other allegations in his Complaint. *See Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10–CV–1777 (ADS) (AKT), 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) (noting that where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss" (internal quotation marks omitted)). For example, Lenart alleges that Coach "has a history of hiring lesser qualified . . . women for employment positions, while rejecting men with higher qualifications" and gives as his sole example the hiring of Leete in lieu of two male candidates. (Compl. ¶¶ 23-28). But Lenart himself acknowledges that Coach initially offered the position to a man; Coach hired Leete only after the male candidate turned its offer down. (*Id.* ¶ 24). Similarly, Lenart alleges that he and other male candidates were required to participate in many interviews and undergo psychological testing while two female candidates were "fast-tracked." (*Id.* ¶ 22). But any inference that Coach preferred not to hire male employees is undercut by the description of Lenart's own recruitment process. Lenart alleges that he initially rejected the job with Coach as it involved "a myriad of duties" in which he was not interested. Rather than

accept his rejection, however, Coach "modified" the position to include only tax planning, Lenart's area of expertise. (*Id.* ¶ 15). Needless to say, a company is unlikely to alter the duties of a position in order to attract a particular candidate if it was not highly interested in hiring that candidate.

Nor do Lenart's claims that "a female manager in the Treasury Department . . . was given preferential treatment as compared to her male peers" suffice. (*Id.* ¶ 29). Although the manager, Regina Paloise, may have been treated more favorably than other male employees, there is nothing in the Complaint that plausibly suggests she was treated more favorably *because* of her gender. *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 175 (2d Cir. 2010) (summary order) (upholding dismissal of the plaintiffs' complaint because, while it "does allege facts consistent with a discrimination claim, *i.e.*, that non-black residents were granted subsidies, it nevertheless 'stops short of the line between possibility and plausibility of entitlement to relief,' because plaintiffs do not allege any facts supporting an inference of racial animus." (citation omitted) (quoting *Iqbal*, 556 U.S. at 696)); *Doe v. Columbia University*, — F. Supp. 3d —, No. 14-CV-3573 (JMF), 2015 WL 1840402, at *12 (S.D.N.Y. Apr. 21, 2015) ("[W]hile Columbia may well have treated Jane Doe more favorably than Plaintiff during the disciplinary process, the mere fact that Plaintiff is male and Jane Doe is female does not suggest that the disparate treatment was *because of* Plaintiff's sex."); *see also El v. N.Y. State Psychiatric Inst.*, No. 13-CV-6628 (WHP), 2014 WL 4229964, at *6 (S.D.N.Y. Aug. 19, 2014) ("Although El's EEOC charge claimed a particular nurse yells only at men and not at women, it only described one incident in which that person yelled at anyone. This does not suggest an improper race — or gender-based motive."). Moreover, even if Paloise was favored because of her gender, one instance of such favoritism — an instance that did not even affect Lenart himself — is not

sufficiently "severe or pervasive" to plead a hostile work environment claim. *Cf. Wilson v. Consol. Edison Co. of N.Y., Inc.*, No. 96-CV-7546 (RCC), 2000 WL 335733, at *6 (S.D.N.Y. Mar. 30, 2000) (granting the defendant summary judgment on the plaintiff's hostile work environment claim, despite the plaintiff's allegation that his supervisor favored certain racial groups, because the plaintiff "fail[ed] to provide concrete evidence as to how th[e] alleged favoritism affected him" and because "allegations of isolated encounters that were not definitively discriminatory do not amount to severe and pervasive conduct").

Lenart also claims that his male co-workers "often complained" that the "female gender bias at Coach would prevent them from receiving promotions," and "regularly commented" that Walsh wanted to create a "team of Amazon women" and supported "girl power." (Compl. ¶ 30). Such allegations, however, amount to nothing more than the workers' subjective beliefs that they were being discriminated against. And, because a hostile work environment claim has both objective and subjective prongs, "even if [Lenart can] show [his and others'] subjective belief that [his] workplace was hostile," he must still allege conduct making it plausible that "a reasonable person would have concluded that the work environment was hostile." *Ochei v. Coler/Goldwater Memorial Hosp.*, 450 F. Supp. 2d 275, 285 (S.D.N.Y. 2006). Put simply, the subjective belief of Lenart and his co-workers that there was sex discrimination afoot — "however strongly felt — is insufficient to satisfy his burden at the pleading stage." *Doe*, 2015 WL 1840402, at *11; *see, e.g.*, *Dooley v. JetBlue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955, at *3 (S.D.N.Y. Apr. 1, 2015) (holding that the plaintiff's "repeated assertions that [the defendant's] actions can only be the product of discrimination lack any factual support and, thus, do not constitute circumstances giving rise to a plausible inference of racially discriminatory intent" (internal quotation marks and citation omitted)); *Jones v. City of N.Y.*, No.

14-CV-0826 (CBA) (RLM), 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015) (noting that while the plaintiff "may well have subjectively believed that defendants' comments about her weave were tied to her skin color, that is plainly insufficient" (citation omitted)).

Ultimately, Lenart's most significant allegation in support of his hostile work environment claims is that Walsh told one of Lenart's male co-workers on "numerous occasions" that she would "like to have a staff of all women." (Compl. ¶ 19).[1] Even that remark, however, is insufficient. First, Lenart never alleges that Walsh made such a comment to him. It is certainly true, as Lenart argues (Pl.'s Mem. Law Opp'n Def.'s Mot. To Dismiss (Docket No. 18) ("Pl.'s Mem.") 10), that comments heard second hand are relevant to the Court's analysis, but they "are not as impactful on one's environment as are direct statements [and,] consequently, they are less persuasive in stating a hostile work environment claim." *Sletten v. LiquidHub, Inc.*, No. 13-CV-1146 (NRB), 2014 WL 3388866, at *7 (S.D.N.Y. July 11, 2014) (citing cases). Further, although Lenart alleges that Walsh made the comments on "numerous occasions," he has not shown that they were more than "isolated acts, [which] do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (citing cases); *see, e.g.*, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that a

---

[1] Lenart also alleges that Walsh stated that she had created "a girl power team based in New York" during a Treasury meeting. (Compl. ¶ 31). That comment, however, was made after Lenart was terminated, and therefore could not have "alter[ed] the conditions of [his] employment." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015); *see, e.g.*, *Lee v. Healthfirst, Inc.*, No. 04-CV-8787 (THK), 2007 WL 634445, at *22 (S.D.N.Y. Mar. 1, 2007) ("[N]o reasonable jury could conclude, on the basis of the two purported remarks made to Plaintiff by Marchany, and two remarks purportedly made to other employees after Plaintiff's employment was terminated, that Plaintiff was subject to ridicule and insult on the basis of her national origin or gender, that was severe and pervasive . . . ."); *Barrow v. Burke Rehab. Hosp., Inc.*, 998 F. Supp. 346, 350 (S.D.N.Y. 1998) (granting summary judgment against the plaintiff on a hostile work environment claim where "[m]any of" the racially derogatory remarks "occurred either before or after [the plaintiff's] employment").

supervisor's occasional racist remarks "fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment"); *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *7 (S.D.N.Y. Feb. 26, 2015) (holding that one incident where a co-worker looked "aghast" when the plaintiff told her his age and "consequently made fewer requests of him . . . falls well short of being so extraordinarily severe to have altered the conditions of his working environment" (internal quotation marks omitted)); *De la Cruz v. City of N.Y.*, 783 F. Supp. 2d 622, 644 (S.D.N.Y. 2011) (concluding that a defendant's "stray remarks regarding [the plaintiff's] seniority and physical fitness (or lack thereof)" did not establish a hostile work environment claim). Accordingly, Lenart's hostile work environment claims under Title VII and the NYSHRL must be, and are, dismissed.

Lenart does, however, state a plausible hostile work environment claim under the NYCHRL, which "does not require either materially adverse employment actions or severe and pervasive conduct" in order to state a claim. *Mihalik*, 715 F.3d at 114. "Instead, a focus on unequal treatment based on gender — regardless of whether the conduct is 'tangible' (like hiring or firing) or not — is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute." *Id.* (internal quotation marks omitted). Thus, although New York courts have held that the NYCHRL, like Title VII, does not "operate as a general civility code," and that a defendant may avoid liability for acts that are nothing more than "petty slights and trivial inconveniences," *Nelson v. HSBC Bank USA,* 929 N.Y.S.2d 259, 264 (App. Div., 2d Dep't 2011) (internal quotation marks omitted), all that is generally required under the NYCHRL is that the plaintiff "proffer evidence of 'unwanted gender-based conduct,'" *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 588 (S.D.N.Y. 2011) (quoting *Williams v. NYC Hous. Auth.,* 872 N.Y.S.2d 27, 38 (App. Div., 1st Dep't 2009)). Coach argues that Lenart's NYCHRL claim fails

because he does not allege that he himself was treated differently than a similarly situated female colleague. (Def.'s Mem. 11-12). But he does allege that he was subjected to "unwanted gender-based conduct": Specifically, he claims he had to undergo extra interviews and psychological testing, whereas his female colleagues did not, and that he had heard that Walsh had expressed a preference for working with women. (Compl. ¶¶ 14-22). Although thin, such allegations are sufficient to state a claim, particularly after *Littlejohn*. *See Mihalik*, 715 F.3d at 113 (stating that "even a single comment may be actionable in the proper context" when evaluating a hostile work environment claim under the NYCHRL); *Carter v. Verizon*, No. 13-CV-7579 (KPF), 2015 WL 247344, at *8 (S.D.N.Y. Jan. 20, 2015) (similar).

## B. Wrongful Termination

The Court turns next to Lenart's sex discrimination claims, which appear to be based on his termination. (*See* Compl. ¶¶ 36-47). After *Littlejohn*, to survive a motion to dismiss a claim of discriminatory discharge under Title VII or the NYSHRL, a plaintiff must allege only facts plausibly suggesting that he "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." 795 F.3d at 311. Here, although it is a close call, the Complaint meets that standard. Lenart alleges that he was fired on April 5, 2013, during a meeting at which Leete and a member of the Coach human resources department were present. (Compl. ¶¶ 32-33). He was told at the meeting that his position had been eliminated due to a corporate restructuring. (*Id.* ¶¶ 33-35). Although Lenart does not explicitly allege that he was terminated because of his gender (or even that Coach's stated reason for firing him was false), he does allege that the majority of his responsibilities were assumed by a woman. (*Id.* ¶ 35). In *Littlejohn*, the Second Circuit held that "[t]he fact that a plaintiff was replaced by someone

11

outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including the pleading stage." *Littlejohn*, 795 F.3d at 313; *see also id.* at 312-313 (stating that "an inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class" and citing cases).  It follows that that allegation alone may be sufficient for Lenart to meet his burden at this stage.

In any event, Lenart also alleges that Walsh, the Senior Vice President of the Treasury Department, commented on "numerous occasions" that she would "like to have a staff of all women" (Compl. ¶ 19), and stated after Lenart's termination that she had created a "girl power" team in New York (*id.* ¶ 30).  Those statements may well turn out to have been intended as innocuous "comments of female empowerment." (Mem. Law Supp. Def.'s Motion To Dismiss ("Docket No. 13) ("Def.'s Mem.") 6).  And it is true that Lenart does not explicitly allege that Walsh herself was involved in the decision to fire him.  But given Walsh's senior position as Senior Vice President of the Treasury Department, and the allegation that she had "managerial or supervisory responsibility" over Lenart (Compl. ¶ 80), an inference can be drawn that Walsh played a role in the decision to terminate him.  *See, e.g.*, *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07-CV-11316 (HB), 2009 WL 900739, at *4 (S.D.N.Y. Apr. 3, 2009) ("An important, though not determinative, factor is whether the [discriminatory] remark was made by a person who is involved in the decision-making process with respect to the plaintiff." (citing cases)).  In any event, Lenart's allegations that a senior executive made several arguably discriminatory statements, combined with his allegations that a woman assumed most of his duties, are enough to clear the low hurdle set by the Second Circuit in *Littlejohn*.

Finally, Coach's argument that Lenart himself acknowledges that he was told that he was fired because of restructuring is immaterial. (Def.'s Mem. 13). Whether an employer had a non-discriminatory reason for firing a plaintiff is a question that a court reaches only at step two of the *McDonnell Douglas* framework, and the Second Circuit instructed in *Littlejohn* that, in order to survive a motion to dismiss, "[t]he plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment *made prior* to the defendant's furnishing of a non-discriminatory justification." *Littlejohn*, 795 F.3d at 311 (emphasis added); *see also id.* at 312 ("[B]ecause this appeal involves review of a motion to dismiss, we focus only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation."). Thus, Lenart need only plead sufficient facts to show that he could plausibly satisfy the requirements of *step one* of the *McDonnell Douglas* framework — that is, to show that he is entitled to the initial presumption of discriminatory motivation. Whether Coach will ultimately be able to rebut that presumption because it had a non-discriminatory reason for firing Lenart is irrelevant at this stage of the litigation. Accordingly, in light of *Littlejohn*, Coach's motion to dismiss Lenart's discrimination claims under Title VII and the NYSHRL must be, and is, denied. Further, as NYCHRL claims must be construed "more liberally" than both Title VII claims and NYSHRL claims, it follows that Coach's motion must also be denied with respect to Lenart's wrongful termination claims brought pursuant to the NYCHRL. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); *Garrigan v. Ruby Tuesday, Inc.*, No. 14-CV-155 (LGS), 2014 WL 2134613, at *3 (S.D.N.Y. May 22, 2014).[2]

---

[2]   Coach argues that Lenart's vicarious liability claims brought pursuant to the NYCHRL should be dismissed because "the underlying claims for sex discrimination and hostile work

**LENART'S MOTION TO STAY AND TO SEAL**

Lastly, the Court turns to Lenart's motion to stay the case and seal the docket in light of ongoing OSHA proceedings.  In those proceedings, Lenart alleges that he was terminated in retaliation for informing Coach that he believed that the company had made material misstatements in its public financial statements.  (Decl. Jeffrey L. Liddle Supp. Pl.'s Mot. To Stay Matter & Seal Docket (Docket No. 11), Ex. 1 ("OSHA Compl.") at 1).  District courts have broad discretion in deciding whether to grant a motion to stay.  *See, e.g.*, *Kuriakose v. Intervenor for Fed. Home Loan Mortg. Co.*, No. 08-CV-7281 (JFK), 2009 WL 323525, at *1 (S.D.N.Y. Feb. 6, 2009) (noting that "a district court generally enjoys broad discretion to grant a stay and fix its length"); *Statewide Aquastore, Inc. v. Pelseal Techs., LLC*, No. 06-CV-0093 (FJS) (GHL), 2007 WL 1825204, at *1 (N.D.N.Y. June 21, 2007) ("A district court has discretion to stay a case pursuant to 'the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)).  Lenart argues that the case should be stayed because "the identical parties are litigating the same matter — the termination of Mr. Lenart's employment — [i]n the OSHA proceeding."  (Mem. Law Supp. Pl.'s Mot. Stay Matter & Seal Docket (Docket No. 11) ("Pl.'s Stay Mem.") 2).  But, as Coach points out in its opposition (Def.'s Mem. Law Opp'n Pl.'s Mot. To Stay & Seal (Docket No. 14) ("Def.'s Stay Mem.") 5-6), the allegations in Lenart's complaint before OSHA are entirely distinct from those made here.  The resolution of the OSHA proceedings, therefore, is unlikely to obviate the need for further proceedings before this Court.

---

environment fail as a matter of law." (Def.'s Mem. 17).  In light of the Court's denial of Coach's motion to dismiss those underlying claims, that argument is rejected.

Additionally, the parties have already been litigating Lenart's discrimination claims (first before the EEOC and now before this Court) for two years, and there is no indication that the OSHA proceedings are likely to end soon. (*Id.* at 6-7). The additional delay that would result from a stay in this case can only prejudice Coach, as "evidence may become more difficult to obtain; employees will continue to come and go from Coach in the normal course and memories may naturally fade." (*Id.* at 7). Lastly, Lenart does not dispute Coach's contention that, because Lenart's OSHA complaint had been pending for more than 180 days when the Complaint in this case was filed, he could have withdrawn his complaint from OSHA and pursued his whistleblower and discrimination claims in one action before this Court. (*Id.* at 7-8 (quoting 29 C.F.R. § 1980.114); Pl. Reply Mem. Further Supp. Pl.'s Mot. To Stay Matter & Seal Docket (Docket No. 17) ("Pl.'s Stay Reply") 1-4 (not responding to Coach's argument)). The fact that he did not do so belies any claim that he is truly concerned about the possibility of duplicative proceedings. That Lenart "would like to focus on the whistleblowing claim pending at OSHA" (Pl.'s Stay Reply 2) is beside the point. Because he fails to show that judicial economy, principles of fairness, or any other reason counsels in favor of a stay, his motion is denied.

Lenart's request to seal the entire docket, or, in the alternative, the papers filed in connection with the motion to stay, is also denied. Because the documents at issue (and, by extension, the docket) are judicial documents, they may be maintained under seal only if Lenart is able to overcome the presumption in favor of public access. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of public access); *Skyline Steel, LLC v. PilePro, LLC*, 13-CV-8171 (JMF), 2015 WL 556545, at *4 (S.D.N.Y. Feb. 9, 2015) (noting that papers submitted in connection with a motion to stay were judicial documents). He fails to do so. First, his argument for sealing the entire docket — that,

15

if the docket were not sealed, he would have to explain why the case was stayed (Pl.'s Stay Mem. 3) — is moot in light of the Court's denial of his motion for a stay. Second, he provides no authority to support his argument that the documents should be maintained under seal because the OSHA proceedings involve allegations that Lenart acted as a whistleblower and OSHA would not disclose the contents of its investigation while it was ongoing. (*Id.*; Pl.'s Stay Reply 4). Significantly, the documents will likely be subject to public disclosure pursuant to the Freedom of Information Act, 5 U.S.C. § 552, after the investigation has concluded. (Pl.'s Stay Reply 4). And finally, Lenart's vague references to his and Coach's privacy and reputational interests do not suffice. Coach does not oppose public disclosure (Def.'s Stay Mem. 8), and the type of conclusory invocations of harm that Lenart makes in his memorandum are plainly inadequate to overcome the presumption in favor of public access. *See, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, No. 09-CV-4373 (SAS) (JLC), 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010) (finding that, despite the Court's understanding of the plaintiff's desire "not to air publicly a sensitive personnel matter," a "generalized concern of adverse publicity is not a sufficiently compelling reason to outweigh the presumption of access" (internal quotation marks omitted))*;* *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-CV-4483 (RCC) (MHD), 2006 WL 3016311, at *2 (S.D.N.Y. Oct. 23, 2006) (finding that the defendants had not overcome the presumption in favor of public access where "they assert[ed] in purely conclusory terms that plaintiffs' papers contain[ed] baseless accusations of misconduct against the management of [defendants], and that public access to these accusations [would] cause the company some unspecified harm").

## CONCLUSION

For the reasons stated above, Lenart's motion to stay and to seal is DENIED, while Coach's motion to dismiss is GRANTED in part and DENIED in part. Specifically, Lenart's

Title VII and NYSHRL hostile work environment claims are dismissed; his remaining claims — namely, his hostile work environment claim under the NYCHRL and his wrongful termination claims under Title VII, the NYSHRL, and the NYCHRL — survive.

Within **seven days** of the date of this Opinion and Order, the parties shall publicly file on ECF all documents submitted in connection with Lenart's motion to stay.

The Clerk of Court is directed to terminate Docket No. 12.

SO ORDERED.

Date: September 11, 2015
      New York, New York

JESSE M. FURMAN
United States District Judge