UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

TODD LENART,

                      Plaintiff,      :    ECF CASE

             - against -        :    15 Civ. 1922

COACH, INC.,

                   Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY AND SEAL


Of Counsel and on the Brief:

    David W. Garland

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .............................................................................................1

PROCEDURAL HISTORY..................................................................................................2

    A.    Proceedings Before the EEOC ................................................................ 2

    B.    The OSHA Proceedings ........................................................................ 3

    C.    The Court Complaint............................................................................. 4

ARGUMENT .....................................................................................................................4

POINT I    THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR A STAY..............4

    A.    The Lawsuit Does Not Make Any Of The Allegations Set Forth
        In The OSHA Matter. ........................................................................... 5

    B.    Coach Has Already Been Litigating The Subject Of The Lawsuit
        For Nearly Two Years. .......................................................................... 6

    C.    Lenart Has Created The Situation About Which He Now
        Complains........................................................................................... 7

POINT II    LENART HAS NOT ESTABLISHED THAT THE MOTION AND
        DOCKET SHOULD BE SEALED ..........................................................8

CONCLUSION..................................................................................................................9

FIRM:29721637

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                   Page(s)

*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................................................4

*DiRussa v. Dean Witter Reynolds, Inc.*,
   121 F.3d 818 (2d Cir. 1997)..................................................................................8

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012) ..................................................................................4

*Lugosch v. Pyramid Company of Onondaga*,
   435 F.3d 110 (2d Cir. 2006)..................................................................................8

*Lytle v. JPMorgan Chase*,
   810 F.Supp.2d 616 (S.D.N.Y. 2011).....................................................................8

*Nixon v. Warner Communications*,
   435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).............................................8

*Ofosu v. McElroy*,
   98 F.3d 694 (2d Cir. 1996)....................................................................................4

STATUTES

5 U.S.C. § 552, *et al.*............................................................................................9

29 C.F.R. § 1980.114 ...........................................................................................7

FIRM:29721637

## PRELIMINARY STATEMENT

Plaintiff Todd Lenart commenced this lawsuit against Coach, Inc. ("Coach" or the "Company") with the filing of a Complaint on March 13, 2015.  Now, after starting the lawsuit, he comes before the Court to ask for it to be stayed, arguing that the case should not go forward -- but should be left hanging over Coach for an indeterminate amount of time.  Lenart's motion should be denied -- and for the reasons set forth in Coach's accompanying motion, the Complaint should be dismissed in its entirety.

As discussed below, Lenart set in motion the procedural process in which he has placed the parties.  After filing a Charge of Discrimination before Equal Employment Opportunity Commission ("EEOC") in June 2013, he filed a separate whistle-blowing complaint a month later in the Occupational Safety and Health Administration ("OSHA").  Before the EEOC, Lenart claimed that he was a victim of gender discrimination, while in OSHA, he claimed to have been targeted for whistle-blowing.  As a result, for the better part of the next two years, Coach had to defend itself in two separate forums -- and Lenart never had a problem with Coach's having to expend its resources in two separate proceedings.  When it became apparent to Lenart, however, that the EEOC had not found any discrimination and was going to issue a determination in Coach's favor, he withdrew his EEOC Charge and started this lawsuit -- with a Complaint that fails on its face to state a claim.  Rather than risk having the Complaint dismissed, Lenart has asked the Court to stay the case instead.   But for numerous reasons, the Court should decline to stay the case and should grant Coach's motion to dismiss the Complaint.

Likewise, Lenart has not advanced any compelling reason why the motion in this case or the docket should be sealed.  As a result, that portion of his application should be denied as well.

## PROCEDURAL HISTORY

### A.     Proceedings Before the EEOC

Lenart filed a Charge of Discrimination against Coach with the EEOC on June 14, 2013. (Garland Decl. Ex. A).[1] According to the Charge, Lenart alleged that Coach discriminated against him on the basis of his gender by (1) not offering him similar opportunities to be exposed to senior management as female employees; (2) making discriminatory comments; and (3) terminating his employment. (*Id.*). On January 7, 2014, Coach responded to the Charge with the filing of its Position Statement, which denied Lenart's allegations in their entirety. (Garland Decl. ¶ 4).

The EEOC proceeded to conduct an investigation of the Charge. On or about June 13, 2014, Lenart's counsel submitted a "Rebuttal" to Coach's Position Statement. (Garland Decl. ¶ 5). By letter dated July 1, 2014, the EEOC requested that Coach provide additional information. (*Id.*). Coach responded to the EEOC's request in a submission dated July 22, 2014. (*Id.*).

Subsequently, the EEOC conducted a fact-finding conference in Boston, Massachusetts on October 27, 2014, which was attended by Lenart and his counsel and Coach's representative and attorney. (Garland Decl. ¶ 6). At the conference, the EEOC investigator conducting it requested that Coach provide additional information, which it did by letter dated November 25, 2014. (*Id.* at ¶ 7). Significantly, Lenart admitted at the fact-finding conference that he had previously concealed from the EEOC that Coach had offered initially offered his supervisor's position to a male candidate – which undermined his assertion that Coach had a bias against hiring qualified male candidates. (*Id.*).

---

[1] References to the accompanying Declaration of David W. Garland are designated as "(Garland Decl. ¶ __)." References to exhibits attached to the Garland Declaration are designated as "(Garland Decl. Ex. __)."

Following its extensive investigation, the EEOC did not conclude that Coach had engaged in discriminatory behavior. (Garland Decl. ¶ 7). As a result, on December 15, 2014, apparently at Lenart's request, the EEOC terminated its processing of the Charge and issued a Notice of Right to Sue to Lenart. (Garland Decl. Ex. B).

**B.   The OSHA Proceedings**

Less than a month after filing the Charge with the EEOC, on July 3, 2013, Lenart filed a Complaint against Coach with the OSHA alleging retaliatory employment practices in violation of the whistleblower provisions of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. 1514A ("SOX"), including that Coach had terminated his employment in retaliation for his having allegedly complained about "material misrepresentations in Coach's public financial statements concerning tax assets and accruals." (Liddle Decl. Ex.1).[2]

Coach filed its Statement of Position, which denied Lenart's allegations, with OSHA on August 14, 2013. (Garland Decl. ¶ 9). Lenart made additional submissions to OSHA on February 14 and March 14, 2014, and Coach responded to those submissions in a letter dated April 18, 2014. (*Id.* at ¶ 10). About six months later, the parties made further submissions to OSHA; Lenart made one on September 2, 2014, and Coach did so on September 17, 2014. (*Id.*). When Lenart filed this lawsuit, counsel for Coach spoke with the OSHA investigator on March 16, 2015, to determine the status of his investigation; at the time, the investigator could not predict when OSHA's investigation would be completed. (*Id.* at ¶ 11). Coach provided a copy of the Complaint to OSHA. (*Id.*). OSHA has not indicated that it has taken any steps since that time to move its investigation forward. (*Id.*).

---

[2] References to exhibits attached to the Declaration of Jeffrey L. Liddle in Support of Plaintiff's Motion to Stay This Matter and Seal the Docket are designated as "(Liddle Decl. Ex. __)."

## C.     The Court Complaint

Lenart filed the Complaint in this case on March 13, 2005.  The Complaint pleads claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-101 *et seq.* ("NYCHRL").  In the First, Second and Third Claims, Lenart alleges that Coach "unlawfully discriminated against [him] on the basis of sex" in violation of Title VII, the NYSHRL, and the NYCHRL, respectively.  In the Fourth Claim, Lenart alleges that "[t]he discrimination was sufficiently severe or pervasive to alter the conditions of [his] employment and create a hostile work environment" in violation of Title VII.  He makes virtually identical claims under the NYSHRL (Fifth Claim) and the NYCHRL (Sixth Claim).

The Complaint makes no allegations about any "alleged material misstatements in [Coach's] public financial statements concerning tax assets and accruals."  Nor does the Complaint refer to the complaint that Lenart had filed with OSHA nearly two years ago.

The deadline for Coach to respond to the Complaint is May 18, 2015.

On April 1, 2015, the Court scheduled the Initial Pretrial Conference for May 14, 2015, which it subsequently adjourned to May 26, 2015.

## ARGUMENT

### POINT I

### THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR A STAY.

The Supreme Court has stated that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. North Amer. Co.*, 299 U.S. 248,

254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)).  The party seeking the stay "bears the burden of

establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at

255).  As the Second Circuit Court of Appeals observed in *Ofosu v. McElroy*, 98 F.3d 694, 699

(2d Cir. 1996), "[a] request for a stay is an appeal to equity."  In this instance, Lenart has not met

his burden to establish the need for a stay, and the most economical way of addressing the

multiple cases created by Lenart's filings is to dismiss this lawsuit for the reasons set forth in

Coach's accompanying motion.

A.   **The Lawsuit Does Not Make Any Of The Allegations Set Forth In The OSHA Matter.**

Contrary to Lenart's assertion that the parties are "litigating the same matter" in OSHA

and in this Court, the Complaint filed in this action contains none of the allegations made in the

OSHA proceeding.  The Complaint makes no allegations about what Lenart allegedly "believed

to be material misstatements" in Coach's financial statements.  The Complaint makes no

allegations that Lenart "reasonably believed" that Coach engaged in conduct "in violation of

federal securities laws."  The Complaint makes no allegations that Coach terminated Lenart's

employment because he allegedly raised any such issue during his employment with the

Company.

Rather, the Complaint focuses exclusively on what Lenart characterizes as sex

discrimination – both a hostile work environment and discriminatory termination.  In the

Complaint, for example, he pleads that "throughout [his] employment, he experienced and

witnessed instances of sex and gender discrimination…." (Compl. ¶ 16).  Lenart further alleges

that "[t]he environment at Coach was permeated by gender/sex bias against men…" (*Id.* at ¶ 18).

He also pleads that Coach explained to him that his position had been eliminated because "a

decision had been made to reorganize the tax function to better support Coach's needs." (*Id.* at ¶

33).  Nowhere does the Complaint allege that alleged misstatements about accounting issues had

anything to do with gender discrimination or a hostile work environment – and thus the two

matters are not "the same."

**B.     Coach Has Already Been Litigating The Subject Of The Lawsuit For Nearly Two
         Years.**

Lenart filed the EEOC Charge – the jurisdictional prerequisite for this lawsuit – almost

two years ago.  During that time, Coach has expended considerable resources responding to the

Charge and multiple requests for information and documents made by the EEOC.  Coach

responded to every question posed by the EEOC.  In each instance, Coach has pointed out that

no factual basis exists for Lenart's discrimination claims.  The EEOC did not conclude that

Coach engaged in discrimination, which apparently prompted Lenart to pull the case from the

EEOC and file it here.

As part of its ongoing cooperation with the EEOC, Coach sent one of its senior

executives and its counsel to a fact-finding hearing in Boston – where the EEOC matter was

transferred from New York for processing – even though Lenart worked for Coach in New York

and Coach's offices and counsel are located here.  Coach would have been well within its rights

to request that the fact-finding be conducted in New York since the Charge had been filed here –

but in an effort to cooperate with the EEOC and bring the baseless Charge to a conclusion,

Coach expended additional resources – both time and money – by participating in the fact-

finding conference in Boston.

At the fact-finding, Lenart conceded that one of the fundamental allegations he had made

in the EEOC matter was false.  All along, he had represented to the EEOC that Coach went out

of its way to hire a female (Elizabeth Leete) as his supervisor – which supposedly evidenced a

bias against more qualified male applicants.  At the fact-finding, however, Lenart admitted that

he knew that Coach had initially offered the supervisor's position to a male, and only after the male rejected Coach's offer did the Company make an offer to a female candidate (Leete). Remarkably, the Complaint continues to maintain that Leete's hiring somehow shows bias against males – even though in the very next paragraph pleads that Coach "initially offered Leete's position to a male candidate who … was highly qualified for the position…." (Complaint, ¶¶ 23-24).

Moreover, Coach will be prejudiced should the case be stayed.  As we get further away from the period of Lenart's employment in 2012 and early 2013, evidence may become more difficult to obtain; employees will continue to come and go from Coach in the normal course and memories may naturally fade.  Coach should not be placed in a more difficult situation to defend the claims made in the lawsuit.  They should be litigated – and dismissed – now.

**C.    Lenart Has Created The Situation About Which He Now Complains.**

Lastly, the position in which Lenart finds himself is one of his own creation.  Lenart, not Coach, is the one who initiated two separate cases in two different agencies.  For the better part of two years, Lenart has not been troubled by the fact that Coach had to engage counsel, expend resources, and fight his claims on two fronts.  Now, with the deadline approaching for Coach to file its motion to dismiss this lawsuit, Lenart asserts for the first time that "[t]here is no reason to duplicate" the OSHA proceedings.  But a stay is not the best way to avoid duplication if any exists.

Long ago, Lenart could have withdrawn his complaint from OSHA and commenced a proceeding in the District Court:

> (a) If the Secretary has not issued a final decision within 180 days
> of the filing of the complaint, and there is no showing that there
> has been delay due to the bad faith of the complainant, the
> complainant may bring an action at law or equity for de novo
> review in the appropriate district court of the United States, which

> will have jurisdiction over such an action without regard to the
> amount in controversy. A party to an action brought under this
> paragraph shall be entitled to trial by jury.

29 C.F.R. § 1980.114.  Thus, Lenart could have brought in this lawsuit the claims that he made

in the OSHA proceeding – as the 180-day period expired in early 2014.

Further, as pointed out in Coach's motion to dismiss the Complaint, the so-called

"duplication" can be avoided by granting Coach's motion and dismissing the Complaint.  That

will result in only one action remaining pending: the one in OSHA where Lenart apparently

would prefer to prosecute his OSHA complaint.

In any event, equity favors going forward with consideration of Coach's motion to

dismiss, as disposition of that motion may result in the elimination of this proceeding.

## POINT II

### LENART HAS NOT ESTABLISHED THAT THE MOTION
### AND DOCKET SHOULD BE SEALED

Lenart's motion does not set forth the legal standard applicable to his request that the

motion and docket be sealed in this case.[3]  That standard, however, has been set forth by the

Second Circuit in *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006),

and makes clear that there is a well-established presumption of public access to documents filed

with a court that are "relevant to the performance of the judicial function and useful in the

judicial process."  The burden of showing that such documents should be sealed rests on the

party seeking such relief.  *Lytle v. JPMorgan Chase*, 810 F.Supp.2d 616, 621 (S.D.N.Y. 2011);

*DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).  In exercising its

discretion to determine whether the presumption of public access can be overcome, the Court

---

[3] By Order dated April 28, 2015, the Court "temporarily granted" Lenart's request to file the motion under seal.  The Court further ordered that this submission "may be filed under seal pending the Court's decision on Plaintiff's request to seal."

should consider the "relevant facts and circumstances of the particular case." *Nixon v. Warner Communications*, 435 U.S. 589, 599, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

Lenart seems to be arguing that he has a privacy interest in making "a whistleblowing complaint against [Coach] regarding its financial statements." But such complaints, whether they are made by former or current employees in an administrative agency or in a court, are usually subject to public disclosure at some point. In an agency proceeding, once the matter is closed, the complaint may be discoverable under the Freedom of Information Act, 5 U.S.C. § 552, *et al*. ("FOIA"). In a court proceeding, employment-related complaints are typically filed publically without any redaction (except perhaps in the case of privileged information not within the filing party's right to disclose or trade secret or proprietary information). Here, Lenart's counsel's affidavit contains a copy of his original OSHA Complaint. Although not subject to disclosure by OSHA while Lenart's matter is still pending there, the OSHA Complaint would be discoverable under FOIA once OSHA closes the matter. Thus, it may be appropriate for the Court to maintain the OSHA Complaint under seal until such time as the OSHA proceeding is closed and it is subject to disclosure under a FOIA request.

As for Lenart's request to "seal the docket," he has not advanced any basis for sealing it. Under such circumstances, no basis exists for the Court's granting this request.

## CONCLUSION

For the foregoing reasons, the Court should deny Lenart's request to stay this matter and his request to seal the docket (except for sealing the OSHA Complaint until such time as it is subject to disclosure under a FOIA request).

EPSTEIN BECKER & GREEN, P.C.

By: _____

    David W. Garland
    250 Park Avenue
    New York, New York 10177
    (212) 351-4500
    *Attorneys for Defendant Coach, Inc.*

Dated:  May 11, 2015

10

<u>AFFIDAVIT OF SERVICE</u>

STATE    OF   NEW    YORK)
                                                )      ss.:
COUNTY OF NEW YORK      )

           Frances Many-Harris, being duly sworn, says:

           I am not a party to this action, am over 18 years old and reside in North Arlington,

New Jersey.  On May 11, 2015, I served a true copy of the following documents: *Defendant's*

*Memorandum of Law in Opposition to Plaintiff's Motion to Stay and Seal together with the*

*Declaration of David W. Garland in Opposition to Plaintiff's Motion for Stay* by electronic mail

to jliddle@liddlerobinson.com and elynch@liddlerobinson.com and also by FedEx overnight

delivery, addressed to the following persons at the address indicated below:

                     Jeffrey L. Liddle, Esq.
                     Erin E. Lynch, Esq.
                     Liddle& Robinson, L.L.P.
                     800 Third Avenue
                     New York, NY 10022

                     Frances Many-Harris

Sworn to before me this
**11th day of May, 2015**

           Notary Public

           BEVERLY A. HARRIS CHANCE
           Notary Public, State of New York
                No. 01HA4322561
             Qualified in Kings County
         Commission Expires 03/14/20__

FIRM:29975728v1